[Crim. No. 1036.    Fourth Dist.    Aug. 15, 1955.]

THE PEOPLE, Respondent, v. PRESTON LAVERN HOWARD, Appellant.

Preston Lavern Howard, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was charged with robbery alleged to have been committed on January 1, 1955, it being also alleged that he was at that time armed with a deadly weapon, a .38 caliber nickel-plated revolver. In a second count he was charged with the crime of possession of a firearm by one previously convicted of a felony, in violation of section 12021 of the Penal Code. He was also charged with two prior convictions. He pleaded not guilty as to both counts of the information. He first admitted the prior convictions, but on the advice of the court that he first consult a lawyer he denied them. A jury found him guilty on both counts, and also found that the allegations of the two prior convictions were true. With respect to the first count, the jury fixed the degree as robbery in the first degree, and also found that at the time that crime was committed the defendant

was armed with a deadly weapon. The defendant has appealed from the judgment and "from the order denying defendant's motion for a new trial." From the record, it appears that no such motion was made.

A service station attendant testified that in the early morning hours of January 1, 1955, the defendant came into the station, "put a gun" on him, and demanded that he open the till; that the pistol was, cocked and he could see the bullets in it; that the defendant reached over and took the money out of the till; and that the defendant then made him lie down saying "Give me a chance to get away." There was evidence that about $160 was taken on this occasion.

Early on the morning of January 12, 1955, two police officers saw the defendant walking on the street in San Diego. They questioned him and a search revealed a nickel-plated revolver, which was introduced in evidence. It was found in the defendant's pants pocket and was fully loaded. They took the defendant over to this service station, and the attendant there identified the defendant as the man who had robbed him on January 1, and identified the gun as the one that had been used on that occasion. He also identified a suede jacket then worn by the defendant as similar to the one the defendant was wearing on the other occasion. At the trial the service station attendant again identified the defendant, the gun, and the jacket, in similar manner. Testimony was also received, including certified copies, concerning the prior convictions. The defendant took the stand and admitted the prior convictions. He also admitted the possession of the weapon, as charged in Count II, but claimed that he would not have had it if he "knew there was a law governing it." While on the stand he said nothing of the charge of robbery contained in Count I, and did not deny any of the evidence in that connection.

The evidence of defendant's guilt was overwhelming, and he does not question the sufficiency of the evidence as such. He contends, however, that he was not given a fair trial. ▬ It is first contended that he was deprived of his right to be represented by counsel. At the time he was arraigned, the court asked the defendant if he had counsel and the defendant replied "Not at the present." The court asked him if he wanted an attorney and he replied "No," and then told the court the case could be set for trial and he would have a lawyer by that time. When the court offered to appoint a

lawyer for him, he replied "No, I don't want you to appoint me a lawyer. I will have a lawyer." The court then set the trial for March 11, 1955, and the defendant responded "O.K." The defendant then hired a lawyer named Whittinghill, and paid him $200. The defendant was brought into court on March 9, Whittinghill being present. The court then told the defendant that he was brought in to see whether he had an attorney, and that a continuance would not be granted. The defendant stated that he had paid Whittinghill $200, but that he did not want him to represent him and wanted to get a Mr. Fitzgerald as his attorney, saying that he had told Fitzgerald he would give him the money when he got it back from Whittinghill. The court told the defendant to be ready for trial on the date set, that he would have Whittinghill there, and that Whittinghill would be ready, able and willing to represent him. Whittinghill was present at all stages of the trial but the defendant insisted on conducting his own case. He now contends that he was deprived of the right to be represented by counsel because of the court's failure to compel Whittinghill to give him back his $200, so he could hire another lawyer. So far as the record discloses, the court had no authority to order Whittinghill to return the money. No good reason was given by the defendant for terminating the services of his counsel, who was present and ready to act at all stages after the arraignment, and no prejudicial error appears. (*In re Connor*, 16 Cal.2d 701 [108 P.2d 10]; *People* v. *O'Neill*, 78 Cal.App.2d 888 [179 P.2d 10]; *People* v. *Brickert*, 3 Cal.App.2d 474 [39 P.2d 450]; *People* v. *Adamson*, 34 Cal.2d 320 [210 P.2d 13]; *People* v. *Simeone*, 132 Cal.App.2d 593 [282 P.2d 971].)

The defendant also contends that he did not have a fair trial because he was denied a speedy trial. At other places he complains that he was rushed to trial too soon, depriving him of the opportunity of getting another lawyer, which he intended to do as soon as he got the money back from Whittinghill. It is difficult to understand these contentions in view of the record. The defendant was told on February 17, that the trial was set for March 11, and he expressed satisfaction with that date. He was told on March 9, that a continuance would not be granted. When the case was called for trial on March 11, his counsel, Whittinghill, stated that the defendant was ready, and the defendant made no objection. No continuance was asked for, and while the court several times offered to appoint an attorney for

the defendant such offers were refused. While the defendant stated that he wanted other counsel, it did not appear that he was presently able to get other counsel, and the only suggestion made was to the effect that he hoped to be able to do so at some time in the future. Moreover, the record, including the transcript at the preliminary examination which the defendant has lodged with the court and asked us to consider, shows the following facts: The defendant was arrested on January 12. He was taken to municipal court on January 14, at which time he was informed of his rights, including the right to counsel at all stages. When the court offered to appoint an attorney he advised the court he would have his own attorney, and he did not want the court to appoint an attorney for him. His preliminary hearing was then set for February 2, and was held on that date. The information was filed on February 11. The case went to trial on Friday, March 11, the date set, and the court proceeded to empanel a jury. At 4:25 p. m., while a prospective juror was being examined the defendant created a disturbance, and was subdued and removed from the courtroom by four bailiffs and policemen. The court then adjourned to Monday, March 14. The trial then proceeded and at 4:24 p. m. an adjournment was taken until the next morning to allow the defendant to procure a witness who was not then present. The trial was completed and the verdict returned on March 15. No error appears in this connection.

The defendant's contentions that the judge was biased against him, and that the reporter's transcript does not correctly set forth all of the evidence received, are not sustained by the record. The record discloses that the judge was extremely lenient toward the defendant and allowed him great leeway in presenting his case, and this in the face of his many outbursts and abuse of counsel and witnesses. The judge displayed a commendable degree of patience throughout the trial, under very trying circumstances which were unnecessarily created by the conduct of the defendant. The defendant's criticism of the reporter's transcript is not supported by the record, and there is nothing to indicate that this transcript is not more reliable than the defendant's memory. Moreover, if the facts suggested by his criticisms of the transcript were assumed to be correct these matters could not conceivably have had any effect upon the result.

The defendant states that he was handcuffed at some time during the trial, but points to nothing in the record in

support thereof. The only thing we have found in the record which might indicate that such a thing occurred is the incident above referred to, where the defendant created a disturbance during the trial and was subdued by the officers. No prejudicial error appears. (*People* v. *Marcias,* 130 Cal. App.2d 860 [279 P.2d 987].)

The judgment is affirmed, and the purported appeal from an order denying a new trial is dismissed.

Mussell, J., and Shell, J. pro tem.,* concurred.

A petition for a rehearing was denied August 25, 1955.

*Assigned by Chairman of Judicial Council.